1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

```
- - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,  :
                           :
     Plaintiff,            :
                           :
vs.                        :     Case No. 4:20-cr-105
                           :
KHRISTA KAYE ERDMAN,       :     TRANSCRIPT OF SENTENCING
                           :
     Defendant.            :
- - - - - - - - - - - - - -X
```

                              Courtroom 265, Second Floor
                              U.S. Courthouse
                              123 East Walnut Street
                              Des Moines, Iowa
                              Wednesday, June 1, 2022
                              10:00 a.m.

BEFORE:   THE HONORABLE JAMES E. GRITZNER, Senior Judge

APPEARANCES:

For the Plaintiff:        MIKAELA J. SHOTWELL, ESQ.
                            United States Attorney's Office
                            U.S. Courthouse Annex
                            110 East Court Avenue, Suite 286
                            Des Moines, Iowa  50309

For the Defendant:        DENNIS E. McKELVIE, ESQ.
                            McKelvie Law Office
                            P.O. Box 213
                            Grinnell, Iowa  50112

TONYA R. GERKE, CSR, RDR, CRR
United States Courthouse
123 East Walnut Street, Room 197
Des Moines, Iowa 50309

P R O C E E D I N G S

THE COURT: Take a seat, please. Good morning.

We are convened in the matter of the United States versus Khrista Kaye Erdman, Criminal Number 20-105 for purposes of sentencing as a result of the defendant's plea to Count 1 of the information, conspiracy to distribute 50 grams or more of methamphetamine.

Ms. Erdman, do you understand that you're here now for sentencing as a result of your plea?

THE DEFENDANT: Yes, sir.

THE COURT: Is your plea still guilty?

THE DEFENDANT: I'm sorry. What? I didn't hear.

THE COURT: Is your plea still guilty?

THE DEFENDANT: Yes.

THE COURT: Okay. Counsel, is there any legal reason why sentencing could not proceed today?

MS. SHOTWELL: No, Your Honor.

MR. McKELVIE: No, Your Honor.

THE COURT: I have reviewed the presentence investigation report and related materials, the memoranda of counsel. I have also seen a couple of letters written on your behalf, Ms. Erdman, which I appreciated receiving. If the folks that wrote the letter are here, thank you.

Based upon my review of that material as well as the Government's motion under 5K1.1, I accept the plea agreement and

1  agree to be bound by that agreement.  I find the count to which
2  the defendant pled adequately reflects the seriousness of the
3  defendant's behavior, and I find the plea agreement is in the
4  public interest and in the interests of justice.
5           Has the Government had the opportunity to review the
6  final presentence investigation report?
7           MS. SHOTWELL:  Yes, Your Honor.
8           THE COURT:  Do you find any factual error in that
9  report?
10          MS. SHOTWELL:  No, Your Honor.
11          THE COURT:  Mr. McKelvie, have you reviewed that
12 report?
13          MR. McKELVIE:  Yes, Your Honor, and on receipt I
14 mailed a copy to the defendant, who is at the Polk County Jail.
15 After she had an opportunity to review it, we met and went
16 through it in its entirety and filed a non-objection to that,
17 Your Honor.
18          THE COURT:  Okay.  Ms. Erdman, did you read the
19 presentence investigation report yourself?
20          THE DEFENDANT:  I did, Your Honor.
21          THE COURT:  And have you had a full opportunity to
22 confer with your lawyer about the contents of that report?
23          THE DEFENDANT:  Yes.
24          THE COURT:  I will accept the presentence
25 investigation report as factual findings for our purposes here

1  today.

2       I understand from the memoranda that there's no
3  dispute about the calculation of the guideline range; is that
4  correct, counsel?

5       MS. SHOTWELL:  That's correct, Your Honor.

6       MR. McKELVIE:  That is correct, Your Honor.

7       THE COURT:  For you folks that are in the courtroom
8  that are not accustomed to this process, in federal court in
9  this country we have a guideline sentencing system that assesses
10 the nature of the particular offense that is compared to the
11 criminal history of a defendant that's before the Court, and the
12 combination of those two things results in a recommended
13 guideline range.  The Court is not bound to impose that range,
14 but it is an attempt to reach some level of consistency in
15 sentencing throughout the country.

16      In this particular case, we have an offense level 35
17 based upon the nature of the offense.  We have a criminal
18 history category VI based upon Ms. Erdman's criminal history.
19 That provides the Court with a guideline sentencing range of 292
20 to 365 months.  Against that, we have a departure issue.  I have
21 the Government's motion under 5K1.1.  I have reviewed that
22 motion.

23      Counsel, do you have anything to add to that?

24      MS. SHOTWELL:  No, Your Honor.

25      THE COURT:  All right.  Mr. McKelvie, any further

1  remarks with regard to the 5K1.1 motion?
2          MR. McKELVIE:  Well, Your Honor, only that we agree
3  with the Government's request, and in reality then if the
4  Government is going to -- if the Court is going to grant that,
5  it makes our own request, I think, moot.  We would have asked
6  for basically the same thing on the same grounds.
7          THE COURT:  All right.  I think having reviewed the
8  motion, it seems to me that the Government's recommendation is
9  fully supported, and, therefore, the Government (sic) will grant
10 the motion under 5K1.1 at the level that the Government
11 recommends.
12         With that then, the question is a percentage of what,
13 and so the next question is what is an appropriate sentence
14 under the circumstances.  Mr. McKelvie?
15         MR. McKELVIE:  Again, Your Honor, we've had plenty of
16 opportunity to look at this and believe that the Government's
17 position is fair and just and provides a sentence under the
18 circumstance that is sufficient but not more than necessary to
19 meet the sentencing guidelines, so in all respects we request
20 the Court grant the motions that the Government has filed and
21 impose a sentence that's requested by the Government.
22         THE COURT:  All right. Ms. Erdman, you have the right
23 to speak to the Court yourself today if you want.  It is
24 entirely up to you whether you do so.  But if you've got
25 something you'd like to say, I'd be glad to hear from you.

1              THE DEFENDANT:  I do, Your Honor.

2              My name is Khrista Erdman, and I'm 44 years old.  I'd
3  like to thank the Court today for the chance to offer my deepest
4  and most sincere apologies.

5              I was 15 when I started using meth, and I was in a
6  relationship with a man who was 34 at the time.  I was young,
7  naive, and vulnerable with no self-esteem or self-worth, and he
8  was older and a more mature, charming man.  I saw it as a way
9  out.  By that I mean a way to escape everything in my life.
10 Being so young, I was easily molded and quickly made my whole
11 world revolve around him and using.

12             My inability to stop using for my children eventually
13 cost me my children, and then I used because I lost my children,
14 and the guilt and shame consumed me.  I seemed to be a magnet
15 for abusive and controlling men, and I truly believed that's
16 what I deserved.  There was a void in me that I tried
17 unsuccessfully to fill with anything and everything:  drugs,
18 men, money, chaos in general.  I was lost and stuck, and one
19 after another, my decisions got worse and worse.  I was broken
20 on the inside trying to fix something I couldn't see.

21             I eventually ended up in prison full of self-hatred,
22 denial, and regret, and I would get out, be sober and do really
23 good things, and then usually I would get involved with a man
24 and make my whole world revolve around him, and then for one
25 reason or another, I would eventually throw everything good that

1  I had accomplished down the drain.
2          My whole life has been a series of unhealthy,
3  impossible relationships, and my first instinct when things
4  start to go bad is meth; numb the pain; escape reality, but
5  slowly but surely, it dominates my life in one way or another.
6  It's a vicious cycle of a meth misery merry-go-round, and it's
7  taken me 28 years to figure it out.
8          When I was a kid I told my great-grandmother I was
9  going to be the first woman president and I was going to marry
10 Kenny Rogers because I was his favorite.
11         THE COURT:  Your counsel is trying to help you because
12 it's hard for the court reporter to keep up with you when you're
13 reading something, so if you could slow down a little bit, that
14 would help.
15         THE DEFENDANT:  Obviously neither were possible -- oh,
16 sorry.  Obviously neither of them were realistic for me even
17 when I didn't know it at the time.  But I had dreams, and they
18 didn't consist of being a drug addict or a drug dealer or a
19 junkie or any of the other terrible things I've become.
20         As a result of my addiction, as I sit here in Polk
21 County Jail, I keep asking myself if this drug has poisoned so
22 much of my life, why would I put it back into the community and
23 contribute to ruining someone else's?  Your Honor, there is
24 absolutely no excuse or reason that I -- that I can give you to
25 justify it in any way.  The reality for me is that my judgment

1  is so clouded by my addiction, it's disgusting how much of
2  myself I've lost to this drug.
3           I'm here today to take accountability for the choices
4  I've made and face the consequences.  I know that I'm not a bad
5  person, and I refuse to give up on myself.  As I said in the
6  beginning of this letter, I can only offer my deepest apologies
7  to my children, society, and the people whom I love and who love
8  me for my selfish choices and the destruction I have caused.  I
9  know I'm capable of so much more.
10          And if I could make a request, Your Honor, I'm asking
11 to go to Danbury, Connecticut, where I can participate in the
12 FIT program that's only offered there.  I'm also interested in
13 the dental hygienist program.  They have a legal secretary
14 program.  RDAP is there.  They're all offered.  I feel the
15 programming that would be most beneficial to me is there to help
16 me maintain long-term sobriety.
17          I have such a long history, good and bad, here in
18 Des Moines, and after giving it much thought, my plan when it
19 comes time to parole -- I won't be coming back here to Iowa.
20 Eventually I would like -- I have a home in Arkansas, and I
21 would like to end up there.
22          But I have family in Danbury, and the reason I ask for
23 this, Your Honor, is I've been doing this a long time, and the
24 people that I've used with or lived this lifestyle with are
25 mostly basically in places like Waseca and the places that they

1  commonly send people from Iowa, and I feel like the best -- the
2  best chance I have is to get as far away from here as possible
3  so that I don't have that -- that thinking and that -- I don't
4  know how else to say it.
5          THE COURT:  You don't need the words.  I know what
6  you're saying, and you're absolutely right.
7          THE DEFENDANT:  I feel like that's the best shot I
8  got, you know.  I -- I don't know what else to say about it.
9          THE COURT:  All right.  Thank you.
10         Ms. Shotwell, the Government's view, please?
11         MS. SHOTWELL:  Thank you, Your Honor.
12         I think the defendant actually hit it on the head when
13 she said that there's a lot of bad and a lot of good here.  This
14 truly is a case where there are significant aggravating factors
15 to be balanced with significant mitigating factors.
16         It is hard to overstate the seriousness of the
17 defendant's conduct.  Back in July of 2018, she was on parole
18 for 9 separate criminal convictions, and she was selling
19 methamphetamine.  A search warrant at her house revealed almost
20 300 grams of methamphetamine.  Her parole was revoked on each of
21 those 9 criminal convictions, and she was sent back to prison
22 for a year.  She got out, and within short order she escalated,
23 and within about a year of getting out of prison, she had a
24 large-scale methamphetamine source of supply that she was
25 bringing 10- to 20-kilogram loads of methamphetamine into this

1  community and distributing it.  That is serious.  The context in
2  which she committed that crime is serious, on supervision for
3  each of those 9 criminal convictions dating back to 1999,
4  criminal conduct that was unabated by the search warrant that
5  was executed at her house in July of 2018 for charges that she
6  never received and didn't know she had until she was arrested in
7  October of 2021.
8         All of that being said, there are glimpses here of
9  someone who can be and has been a productive member of the
10 community when she's sober, when she's employed, when she's
11 dedicated to her family, and when she's not hurting her friends
12 and her family and the community.  She immediately accepted
13 responsibility to this case.  She pled guilty to an information
14 with an enhanced drug quantity, and she has taken affirmative
15 steps to atone for the criminal conduct that she was engaged in.
16        She recognized something in her allocution something
17 that this Court recognizes often, which is the paradox of
18 addiction-driven conduct that involves pumping that same drug
19 back into the community, and that recognition and what I believe
20 to be the defendant's genuine words that she hopes to distance
21 herself and wants to take steps to distance herself
22 geographically and mentally from this conduct bodes well for her
23 future on release, so for those reasons, the Government requests
24 a downward variance and would ask the Court to impose a sentence
25 that the parties recommended.

1              THE COURT:  Thank you, counsel.
2              Pursuant to the provisions of Title 18, United States
3  Code section 3553, in determining the sentence that is
4  appropriate, the Court considers the nature and circumstances of
5  the offense and the history and characteristics of the
6  defendant.  I have considered all of the factors under section
7  3553(a), although it will not be necessary to address all of
8  them in the process of explaining the sentence today.
9              Ms. Erdman, I've been doing this a long time, but I
10 have not become callous to the situation that you're confronting
11 here today.  This is very sad.  It's sad on many levels.  It's
12 not only sad from what has happened in your own life.  You've
13 been on a rough road, and I understand that, and I understand
14 the details of that, and I know the letters that I got suggest
15 that this is all about addiction, and certainly in many respects
16 that's true, but we do have the irony of the fact that your
17 addiction caused you to be involved in the enterprise of
18 providing this poison to other people and creating impact on
19 their lives just like it's had on your life, and that is the
20 difficulty that the Court must address in addressing the
21 sentencing situation.
22             Obviously the seriousness of the offense drives the
23 sentence in this case today.  The question of just punishment is
24 resolved no matter what I do today.  The Court does need to be
25 concerned about protecting the public from further crimes that

1  you might commit.  If you can get beyond this addiction, I don't
2  have concern about that.  I think you have the ability to do so
3  much better, and hopefully that's what's going to happen.
4  Anything I do today will also resolve the issue of deterrence to
5  criminal conduct of other persons.
6           I want to commend the counsel because I think that the
7  lawyers have done an excellent job of working through a very
8  difficult case to reach what I think is a reasonable
9  recommendation that is sufficient but not greater than necessary
10 under the unique circumstances of your case.  The Court agrees
11 with counsel that a variance from the guideline range is
12 appropriate based upon your profoundly difficult family history,
13 your serious and long-term addiction, and your recent acceptance
14 of your responsibility and your attitude at this point in your
15 life.
16           Mr. McKelvie, do you seek an RDAP recommendation?
17           MR. McKELVIE:  Yes, Your Honor.
18           THE COURT:  Okay.  Accordingly, the Court's going to
19 vary from the bottom of the guideline range down to 262 months.
20 Against that I will apply the recommendation for a reduction and
21 sentence on that basis.
22           Will the defendant please rise.
23           Based upon the Court's review of the criteria set
24 forth in Title 18, United States Code section 3553, and the
25 unique circumstances of this case, including the 5K1.1 motion,

1  it is the judgment of the Court that the defendant, Khrista Kaye
2  Erdman, is hereby sentenced to the custody of the Bureau of
3  Prisons for a term of 183 months on Count 1 of the information.
4           Counsel, your brief suggests that there's no
5  forfeiture, but there was a preliminary order of forfeiture, and
6  there's -- it's a significant issue in this case.  Is there a
7  forfeiture?
8           MS. SHOTWELL:  There is, Your Honor.  I apologize for
9  the error in the brief.  If the Court would order the forfeiture
10 consistent with the preliminary order of forfeiture at docket
11 35.
12          THE COURT:  I will do so.  The judgment will include
13 the forfeiture of the funds that are mentioned in the
14 preliminary order of forfeiture that was entered in December.
15          Upon release from imprisonment, you'll be placed on
16 supervised release for a period of 5 years.  Within 72 hours of
17 release from the custody of the Bureau of Prisons, you are to
18 report in person to the probation office in the district to
19 which you've been released.
20          While you're on supervised release, you're not to
21 commit another federal, state, or local crime.  You'll be
22 prohibited from possessing a firearm or other destructive
23 device, and you shall not possess any illegal controlled
24 substances.  You'll have to abide by the standard conditions of
25 supervised release plus you must participate in a program of

1 testing and/or treatment for substance abuse as directed by the
2 probation officer until release from that program.
3       You must submit to a mental health evaluation and if
4 treatment is recommended participate in approved treatment
5 programs.  You must participate in a cognitive behavioral
6 treatment program, and you will submit to a search of your
7 person, property, residence, adjacent structure, office,
8 vehicle, papers, computers, and other electronic communications
9 or data storage devices or media conducted by a U.S. probation
10 officer with or without the support of law enforcement including
11 the United States Marshals Service.
12       The Court finds you are unable to pay a fine.  You are
13 ordered to pay a $100 special assessment to the victims
14 assistance fund which will be due immediately and payable
15 without interest to the U.S. Clerk of Court for the Southern
16 District of Iowa.
17       You may be seated.
18       I will recommend to the Bureau of Prisons that you be
19 allowed to participate in the RDAP or similar comprehensive drug
20 treatment programming while in their custody.  I will also
21 recommend placement at the facility at Danbury, Connecticut.
22       You do have the right to appeal from the judgment
23 that's being imposed today.  You would need to do so within 14
24 days of the entry of judgment, and I anticipate that will happen
25 yet today.

1          Counsel, we have Counts 1 and 2 of the indictment to
2  dispose of?
3          MS. SHOTWELL:  Yes, Your Honor.  At this time the
4  Government moves to dismiss Counts 1 and 2 of the indictment.
5          THE COURT:  Counts 1 and 2 of the indictment are
6  dismissed.
7          Anything else to come before the Court with regard to
8  Ms. Erdman this morning?
9          MS. SHOTWELL:  No, Your Honor.  Thank you.
10         THE COURT:  Mr. McKelvie?
11         MR. McKELVIE:  Your Honor, the defendant thanks the
12 United States Government for honoring their representations.
13 Nothing else.
14         THE COURT:  All right.  Ms. Erdman, good luck to you.
15 I hope the Connecticut thing works out.  I think your judgment
16 in that regard is very sound, and I think that that's a wise
17 position that you're taking, and good luck in the programming,
18 and I hope you can get out on the other end of this thing and
19 get on with your life without more bumps.  Good luck to you.
20         THE DEFENDANT:  Thank you.
21         THE COURT:  We're in recess.
22         (Proceedings concluded at 10:20 a.m.)
23
24
25

16

<u>C E R T I F I C A T E</u>

  I, Tonya R. Gerke, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28 U.S.C. Section 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

  Dated at Des Moines, Iowa, October 25, 2022.

<u>/s/ Tonya R. Gerke</u>
Tonya R. Gerke, CSR, RDR, CRR
Federal Official Court Reporter